CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 16 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

RELIASTAR LIFE INSURANCE COMPANY )
OF NEW YORK,                     )
                                 )
    Plaintiff,                   )   Civil Action No. 7:05cv00545
                                 )
v.                               )
                                 )
CHARLES LEMONE, et al.,          )   By: Hon. Michael F. Urbanski
                                 )       United States Magistrate Judge
    Defendants.                  )
                                 )

## MEMORANDUM OPINION

This matter is before the court on plaintiff ReliaStar Life Insurance Company of New York's ("ReliaStar") motion to interplead, defendant Estate of Christine LeMone's ("LeMone Estate") motion to transfer, and defendants Charles LeMone and Charles Taylor's motion to retain jurisdiction.

### I.

This action arises out of a family feud over the beneficiaries named in an annuity policy, AN0002868,[1] purchased by Christine Webb LeMone from plaintiff in 1991. (See Compl., Ex. A) Ms. LeMone changed the beneficiary designation on her annuity with ReliaStar at least three times over the course of the next decade. The controversial beneficiary change occurred in June, 2001. On June 1, 2001, Ms. LeMone changed the beneficiary designation on her annuity from Charles Taylor, her godson, to Adae LeMone, her grandson, with Maureen Saunders, her

---

[1] Though plaintiff's motion to interplead refers to the annuity at issue as policy AN0006828, the court believes, from reviewing the exhibits to the complaint and motion to interplead, that AN0002868 is the correct policy number, and refers to the policy at issue as such herein.

niece, listed as contingent beneficiary. (Compl. ¶ 10, Ex. D)[2] On June 26, 2001, however, Ms. LeMone sent a letter to Jason Stubbleton at ING, stating the beneficiary designation agreement dated June 1, 2001 was to be invalidated and discounted. (Compl. ¶ 11, Ex. E) Ms. LeMone requested more copies of beneficiary designation agreements to designate new beneficiaries, and instructed the recipient of the letter not to accept any further changes to the annuity beneficiaries unless notarized and signed by her. (Compl. ¶ 11, Ex. E)

On July 10, 2001, Ms. LeMone submitted a new, notarized beneficiary designation agreement to ReliaStar and named Charles LeMone, her nephew, and Charles Taylor, her godson, as the primary beneficiaries of the annuity. (Compl. ¶ 12, Ex. F) ReliaStar acknowledged the change in beneficiaries in a letter to Ms. LeMone on July 16, 2001. (Compl. ¶ 13, Ex. G) Ms. LeMone died on November 16, 2004. (Compl. ¶ 14) Her granddaughter Estella LeMone notified ReliaStar of her death thereafter, (Compl. ¶ 15), and inquired as to the last beneficiary change on the annuity, (Compl. ¶ 16). Estella LeMone stated that she believed the beneficiaries were last changed by someone other than Christine LeMone. (Compl. ¶ 16, Ex. J) Claims for the annuity proceeds were submitted to ReliaStar by Charles Taylor and Charles LeMone, named beneficiaries on the annuity. (Compl. ¶¶ 17-18) The

---

[2] The complaint alleges this beneficiary designation was made as to policy AN0002868; yet, Exhibit D to the complaint, offered by the plaintiff in support of this June 1, 2001 beneficiary change, appears to list policy number AN0002867, a second policy purchased by Ms. LeMone over which there is no beneficiary dispute, at the top of the beneficiary designation agreement. The court notes that a handwritten note at the bottom of this document says "Dear Jason, I can't seem to find the other policy AN002867." The court also notes that defendants Charles LeMone and Charles Taylor in their answer to the complaint suggest that the beneficiaries of both of Ms. LeMone's policies, AN0002867 and AN0002868, were changed on June 1, 2001 to Adae LeMone. Furthermore, Ms. LeMone's June 26, 2001 letter, attached to the complaint as Exhibit E, references June 1, 2001 changes to both polices AN0002867 and AN0002868.

executors of the LeMone Estate then sent a letter to ReliaStar, stating that they disputed the named beneficiaries of the annuity due to "improprieties" with respect to the sudden annuity changes in 2001. (Compl. ¶ 20, Ex. N)

The executors of the LeMone Estate believe Charles LeMone and Charles Taylor fraudulently reinstated themselves as beneficiaries, after being removed as beneficiaries, in 2001. (Compl. ¶ 21, Ex. O) They accuse Charles LeMone of abandoning Ms. LeMone, embezzling over $20,000 from her bank account, and taking advantage of her demented condition[3] to purchase a new SUV, a computer, and a mobile home. (Compl. ¶ 21)

Defendants Charles LeMone and Charles Taylor deny such allegations. Charles Taylor claims to have been informed by Ms. LeMone that she was unhappy with her grandson Adae LeMone, who defendants claim tricked her into designating him as beneficiary on annuity policy AN0002868. (Defs.' Answer ¶ 10) Accordingly, defendants Charles LeMone and Charles Taylor dispute the authenticity of the June 1, 2001 beneficiary designation of Adae LeMone. (Defs.' Answer ¶ 9) Defendant Charles LeMone claims to have been aware of the June 26, 2001 letter sent to ING by Ms. LeMone. (Defs.' Answer ¶ 11) In addition, both Charles LeMone and Charles Taylor state they knew of the July 10, 2001 beneficiary designation, and allege this new designation was the result of Ms. LeMone's discovery of Adae LeMone's trickery. (Defs.' Answer ¶ 12) Charles LeMone asserts that he was her caretaker, and that Charles Taylor gave

---

[3] The executors to the LeMone Estate allege Ms. LeMone was diagnosed with dementia in 1998, and that her condition progressively worsened until her death in 2004. (Compl., Ex. O) Charles LeMone moved in to serve as Ms. LeMone's primary caregiver during that time. (Compl., Ex. O) However, guardianship was awarded to her grandson, Adae LeMone, by the court after he discovered $12,000 in unexplained debt and Ms. LeMone expressed reservations about her nephew, Charles LeMone. (Compl., Ex. O)

3

her more support and care than any of her blood relatives. (Compl. ¶ 19, Ex. M) Charles LeMone characterizes Ms. LeMone as a strong-willed, independent woman, and states he understands why family members contest her choice of beneficiaries. (Compl. ¶ 19, Ex. M)

The parties have been unable to reach an agreement over the disbursement of the annuity funds. As a result, ReliaStar filed the instant interpleader action on August 30, 2005, alleging jurisdiction under 28 U.S.C. § 1335.

ReliaStar then filed a motion to interplead on February 13, 2006, asking the court to accept the proceeds of the annuity plus interest into its registry, require named defendants to enter appearances and interplead their claims to the proceeds, allow the interpleader action to go forward and dismiss ReliaStar from the action, award ReliaStar its fees and costs from the interpleader funds, and award the funds to whomever the court deems to be legally entitled to the proceeds.

Additionally, the LeMone Estate filed a motion to transfer, alleging venue is improper and should instead lie in the Eastern District of New York. Defendants Charles LeMone and Charles Taylor filed a motion to retain jurisdiction in response.

## II.

Interpleader actions protect stakeholders from the expense of multiple litigation and multiple liability. Equitable Life Assurance Soc. v. Jones, 679 F.2d 356, 358 (4th Cir. 1982); New York Life Ins. Co. v. Welsh, 297 F.2d 787 (D.C. Cir. 1961); 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1702 (3d ed. 2001). An interpleader action may be brought under 28 U.S.C. § 1335 if the amount in controversy is $500 or more,

4

diversity exists between any two contending claimants, and if the stakeholder has deposited the money or property at issue into the court. 28 U.S.C. § 1335.

The primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder is whether the stakeholder legitimately fears multiple litigation over a single fund. Wright, Miller & Kane, supra, at § 1704. The stakeholder should not be compelled to run the risk of guessing which claimant should be the beneficiary of a contested fund. Wright, Miller & Kane, supra, at § 1704. Ordinarily, in an interpleader action, the court may discharge the stakeholder after determining that interpleader is available and that the stakeholder is disinterested. Nations Bank, N.A. v. Raney, No. 98-0018H, 1998 WL 713803, at *2 (W.D. Va. Oct. 1, 1998); Nationwide Mutual Ins. Co. v. Eckmen, 555 F. Supp. 775, 777 (D. Del. 1983).

Though there is no statutory authority to do so, courts often award costs, as well as attorneys' fees, to the stakeholder when an interpleader action is successful. Murphy v. Travelers Ins. Co., 534 F.2d 1155, 1164 (5th Cir. 1976); see Powell Valley Bankshares, Inc. v. Wynn, No. 2:01cv00079, 2002 U.S. Dist. Lexis 6314, at *4-5 (W.D. Va. Apr. 11, 2002). The theory behind such an award is that plaintiff, by seeking resolution of the multiple claims to the proceeds, benefits the claimants, and that plaintiff should not have to absorb attorneys' fees in avoiding the possibility of multiple litigation. Aetna Life Ins. Co. v. Outlaw, 411 F. Supp. 824, 826 (D. Md. 1976). A district court has the discretion to award attorneys' fees to a stakeholder in an interpleader action when it is fair and equitable to do so.[4] Jefferson Pilot Financial Ins. Co. v.

---

[4] As statutory interpleader is a diversity action, there is controversy over whether state or federal law governs an award of attorneys' fees. Wright, Miller & Kane, supra, at § 1719. Fourth Circuit courts have provided no guidance as to which law governs an award of attorneys' fees under the federal interpleader statute. Lindsey v. Primerica Life Ins. Co., No. 1:00cv789,
(continued...)

5

Case 7:05-cv-00545-SGW-mfu    Document 30    Filed 03/16/06    Page 5 of 11    Pageid#: 209

Buckley, No. 3:04cv783, 2005 WL 221076, at *2 (E.D. Va. Jan. 13, 2005) (quoting Weber v. Rivanna Solid Waste Auth., 2001 U.S. Dist. LEXIS 19644, at *5-6 (W.D. Va. Nov. 27, 2001)).

Some courts have denied an award of attorneys' fees in interpleader actions brought by insurance companies, suggesting that such fees are a part of their cost of doing business. Travelers Indemnity Co. v. Israel, 354 F.2d 488, 490 (2d Cir. 1965) ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business to their insureds by bringing an action for interpleader."); see also Lewis v. Atlantic Research Corp., No. 98-0070H, 1999 U.S. Dist. LEXIS 13569, at *21-22 (W.D. Va. Aug. 30, 1999) (Wilson, J.); Metropolitan Life Ins. Co. v. Holding, 293 F. Supp. 854, 858 (E.D. Va. 1968); Wright, Miller & Kane, supra, at § 1719. Additionally, courts have declined to award attorneys' fees and costs where the amount of fees and costs claimed would significantly deplete the total fund at issue. Lewis, 1999 U.S. Dist. LEXIS 13569, at *22-23. As Judge Wilson quoted in Lewis:

> The remedy of interpleader should, of course, be a simple, speedy, efficient and economical remedy. Under ordinary circumstances there would be no justification for seriously depleting the fund deposited in court by a stakeholder through the allowance of large fees to his counsel. The institution of a suit in interpleader, including the depositing of the fund in the registry of the court and the procuring of an order for discharge of the stakeholder from further liability, does not usually involve any great amount of skill, labor or responsibility,

---

[4](...continued)
2002 U.S. Dist. LEXIS 19530, at *3 (M.D.N.C. May 17, 2002). However, the majority of federal courts addressing this issue do not mention the question of state law but simply refer to the court's discretion or to traditional equity practice. Wright, Miller & Kane, supra, at § 1719. In this case, the question of whether state law or federal law governs the ability of the court to award attorneys' fees is irrelevant, as attorneys' fees and costs may be awarded in the court's discretion when fair and equitable under both Virginia and federal law. See, e.g., Schlegel v. Bank of America, 67 Va. Cir. 108 (2005).

6

> and, while a completely disinterested stakeholder should not
> ordinarily be out of pocket for the necessary expenses and attorney's
> fees incurred by him, the amount should be modest.

Id. at *24 (quoting Hunter v. Federal Life Ins. Co., 111 F.2d 551, 557 (8th Cir. 1940)); see also Powell Valley Bankshares, 2002 U.S. Dist. LEXIS 6314, at *4-5.

In its complaint and motion to interplead, ReliaStar requests that the court accept the annuity proceeds, plus interest, into its registry, and seeks discharge from the action with its attorneys' fees and costs to be paid out of the interpleader funds. As an interpleader action is appropriate in this case under 28 U.S.C. § 1335, the court grants plaintiff's motion to interplead. The amount in controversy is at least $27,972.30, (Pl.'s Opp. Mot. Transfer 1), and diversity jurisdiction exists between the adverse claimants.[5] ReliaStar admits liability for payment of the annuity proceeds, (Compl. ¶ 27; Pl.'s Mem. Support Mot. Interplead 7), and is willing to deposit the funds plus interest into the registry of the court, (Compl. ¶ 27; Pl.'s Mot. Interplead 1). Furthermore, the dispute over the beneficiary designation of the annuity and the competing claims to the proceeds give rise to plaintiff's multiple liability. (Pl.'s Mem. Support Mot. Interplead 1, 7)

ReliaStar has established that it is a disinterested party. The plaintiff is unable to determine the proper beneficiary of the funds, and encouraged the disputing parties to resolve their competing claims to the annuity proceeds before an interpleader action was brought. (Pl.'s Mem. Support Mot. Interplead 8) ReliaStar played no role in creating the dispute to these funds. Accordingly, ReliaStar shall be discharged from this action with prejudice, after the annuity

---

[5] Charles Taylor resides in Alabama, Charles LeMone resides in Virginia, and the LeMone Estate lies in New York. (Compl. ¶¶ 2-4)

7

funds plus interest have been deposited with the court. See Jefferson Pilot, 2005 WL 221076, at *2.

ReliaStar also seeks an award of fees and costs, asserting its disinterested status in this case. Such an award lies within the discretion of the court. See Jefferson Pilot, 2005 WL 221076, at *2. As plaintiff has not yet provided the court with a statement outlining the fees and costs it is claiming in this case, the court declines to exercise its discretion to award attorneys' fees and costs at this time. Following Judge Wilson's opinion in Lewis, the court will consider awarding plaintiff fees and costs, so long as the fees sought by ReliaStar do not threaten to deplete the interpleader funds at issue. Lewis, 1999 U.S. Dist. Lexis 13569, at *23-24. Plaintiff should submit an affidavit and attorneys' fees statement for the court's consideration.

### III.

Defendant LeMone Estate seeks a transfer of venue in this case. In a statutory interpleader action, venue lies where any claimant resides. 28 U.S.C. § 1397. Such district is proper even if only one of a large number of claimants resides there. Wright, Miller & Kane, supra, at § 1712. However, even if venue is proper, the convenience of the parties may dictate that the case should be transferred to a district where it could have originally been brought. 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."); see also Wright, Miller & Kane, supra, at § 1712.

Transfer under 28 U.S.C. § 1404(a) generally requires consideration of plaintiff's choice of venue, witness convenience and access, convenience of the parties, and the interest of justice. Matini v. Reliance Standard Life Ins. Co., No. 1:05cv944, 2005 U.S. Dist. LEXIS 25629, at *5-6

8

(E.D. Va. Oct. 24, 2005). However, courts have held that an interpleader plaintiff has no real interest concerning the jurisdiction in which the dispute between the claimants is to be litigated, and therefore, there is no reason to defer to its selection of forum. Bankers Trust Co. of Western New York v. Crawford, 559 F. Supp. 1359, 1363 (W.D.N.Y. 1983); Employees Sav. Plan of Mobil Oil Corp. v. Vickery, 99 F.R.D. 138, 144 (S.D.N.Y. 1983); see also Wright, Miller & Kane, supra, at § 1712. The burden remains with the moving party to show transfer to another forum is appropriate, and the movant must show "the balance of convenience among the parties and witnesses is strongly in favor of the forum to which transfer is sought." General Foam Plastics Corp. v. Kraemer Export Corp., 806 F. Supp. 88, 90 (E.D. Va. 1992).

In support of its motion to transfer, the LeMone Estate provided the affidavit of John Ray, attorney for the LeMone Estate. In his affidavit, Ray alleges venue in this case is improper, and that venue should lie in the Eastern District of New York. (Ray Aff. ¶ 2) Ray claims that all acts regarding the subject matter of this case occurred in the Eastern District of New York, that the witnesses to Christine LeMone's change in beneficiaries reside in New York, and that the insurance policy at issue was obtained in New York. (Ray Aff. ¶¶ 5, 6, 7) Additionally, Ray argues that the plaintiff is a New York corporation and that the LeMone Estate is located in New York. (Ray Aff. ¶ 3)

Plaintiff ReliaStar and defendants Charles LeMone and Charles Taylor oppose a transfer of venue. Plaintiff claims the venue is proper under 28 U.S.C. § 1397, as two of the claimants to the annuity funds, Charles LeMone and Estate executor John Saunders, are residents of Virginia. (Pl.'s Opp. Mot. Transfer 1-2) Additionally, plaintiff states that the other executor of the LeMone Estate, Adae LeMone, resides in Maryland, a short distance from the Western District of

Virginia. (Pl.'s Opp. Mot. Transfer 2) Furthermore, plaintiff claims a motion to transfer venue at this point would cause ReliaStar to incur even more expense for the benefit of the party ultimately determined to be the proper beneficiary to the policy. (Pl.'s Opp. Mot. Transfer 2-3)

Defendants Charles LeMone and Charles Taylor also oppose the motion to transfer venue. These defendants aver that the Western District of Virginia is the most convenient forum for the parties, in that Charles LeMone resides in the district, executor John Saunders is also subject to the jurisdiction of this court, and executor Adae LeMone "can more easily be subject to the jurisdiction of this Court." (Defs.' Mot. Retain Juris. ¶¶ 1-2) Furthermore, defendants Charles LeMone and Charles Taylor state the chosen forum is a convenient one because Charles Taylor, a resident of Alabama, can more easily attend court sessions in this district, and because Christine LeMone owned property in this district, which is now part of the Estate. (Defs.' Mot. Retain Juris. ¶ 2)

The venue chosen by plaintiff was clearly proper under 28 U.S.C. § 1397, as claimant Charles LeMone resides in Ferrum, Virginia. Additionally, the Western District of Virginia appears to be the more convenient forum, as two claimants and one executor of the Estate all reside in southeastern states, two of the three residing in Virginia. Furthermore, Adae LeMone, another Estate executor, resides in nearby Maryland. While some witnesses to this action do reside in New York, the two executors and two opposing claimants residing in this area will also likely be witnesses at trial and as such, this venue is more convenient than one in New York. The LeMone Estate, the moving party on this motion, has only provided the affidavit of the Estate's attorney in support of its position and has not met its burden of proving the balance of party convenience weighs strongly in favor of the Eastern District of New York.

10

While the plaintiff's choice of forum is not given deference in interpleader actions, the plaintiff's choice in this case appears to be most convenient to the parties. Furthermore, the interests of justice would not be served if this case were transferred, as a transfer would cause unnecessary delay and expense to the parties, especially to the disinterested plaintiff. The court declines to exercise its discretion to transfer venue in this case, and denies defendant LeMone Estate's motion to transfer. Accordingly, defendants Charles LeMone and Charles Taylor's motion to retain jurisdiction is granted.

A separate order will be entered this day. The Clerk is directed to send certified copies of this opinion to all counsel of record.

Entered this 16th day of March, 2006.

_____
Michael F. Urbanski
United States Magistrate Judge